CHRISTIAN STERN *et al.*

*v.*

THE PEOPLE, for use of St. Clair County.

*Filed at Mt. Vernon January 18, 1882—Rehearing denied May Term, 1882.*

1. OFFICIAL BONDS—SURETY—*neglect to require an accounting by county treasurer—effect on liability of surety.* Statutory directions to public officers are given for the security and convenience of the government, and to regulate the conduct of its officers, and being only directory, they form no part of the contract of the sureties of such officers upon their official bonds, and hence the sureties on a county treasurer's bond can not plead the negligence

or failure of the county board to require their principal to render an account, or to remove him for neglect to render such account, as a defence to their liability upon a subsequent breach of his bond.

2. SAME—*forgery of the name of one of the sureties.* The fact that the name of one of the sureties to an official bond has been forged, will not discharge a surety who subsequently executes the bond in ignorance of such forgery.

3. SAME—*former decisions.* In *Seely v. The People,* 27 Ill. 173, it was held, where a party executes a bond as surety with another whose name has been forged, he will not be liable; but in *Stoner v. Millikin,* 85 Ill. 218, that case is overruled. And the case of *The People v. Organ,* 27 Ill. 29, in so far as it makes a distinction in this regard between commercial paper and other instruments, is overruled by *City of Chicago v. Gage et al.* 95 Ill. 593.

4. SAME—*how a surety may obtain his release.* The only mode by which the sureties on a county treasurer's bond can be released from further liability, is by giving notice requiring him to give a new bond, under the statute. In this way they may compel the execution of a new bond with other sureties, or a vacation of the office.

5. SAME—*as to county orders held by a bank, as against deposit by county treasurer—rights of surety.* Under an arrangement between a county treasurer and a bank, whereby the former was to deposit revenue with the bank, and the bank be allowed to place county orders to its own credit as against the deposit, the sureties of the treasurer can not claim a payment of all orders in the possession of the bank at the time of the treasurer's default and removal, when nothing in fact has been paid by him on such orders. As between the treasurer and the bank, the former would be entitled to have the orders delivered up to him to the extent the money deposited by him had been treated as paying for them, or the set-off actually made, but no further, and his sureties occupy no more favorable position.

6. OFFICER—*"successor in office"—on removal of county treasurer.* Where a county treasurer is removed by the county board for refusing to make a settlement, etc., the person appointed by the board in his place is his successor in office, and is required to perform *all* the duties of the office until another treasurer is elected, and as such officer has the right to make a demand of the treasurer so removed for the funds in his hands, and on his failure to pay over on such demand, an action lies on his official bond.

7. JUDICIAL AND MINISTERIAL POWERS—*removing county treasurer.* The power to remove a county treasurer, conferred upon the county board, is not a judicial power, but is a ministerial or executive power.

8. EVIDENCE—*report of officer, as against his sureties—record of removal from office.* The reports of a county treasurer, in his handwriting, presented to the county board, as well as the record of the board approving them, are competent evidence against his sureties in an action on his official bond.

9. Also, the record of the removal of the treasurer from office by the county board, is admissible in evidence in such suit, as against the sureties on the bond, that being the best evidence of the fact of removal, and of the cause thereof. It is proper the ground of removal, as, that the officer had been found to be a defaulter, should be recited in the record, and the ·part of the record containing such recital is admissible as well as that part showing the fact of removal itself.

10. SAME—*testimony of deceased witness—how shown.* There is no error in refusing to allow in evidence a bill of exceptions showing the testimony of a deceased witness. Witnesses should be called to prove, from their recollection, what was the testimony of the deceased witness.

11. INTEREST—*on county treasurer's account from settlement.* Where a county treasurer renders an account to the county board, its approval by that body liquidates and settles it up to that time, and interest at the rate of six per cent is allowable thereon from such date, in a suit upon his official bond.

12. SAME—*retention of money by county treasurer.* Where a county treasurer retains money of his county to his own use, which retention is at the time unknown to the county board, under the statute he is chargeable with interest on the same, in a suit on his official bond.

13. INSTRUCTION—*should be based upon the evidence.* Where there is not only no evidence on which to predicate an instruction, but there is evidence directly to the contrary, it is not error to refuse the same.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an action of debt by the People of the State of Illinois, for the use of St. Clair county, on the official bond of George W. Sieber, late treasurer of that county, against the obligors therein. The special breach assigned is, that Sieber had refused to make a report to the county board, at the regular session of said board, held the first Monday of December, 1878, of the amount of money, county orders, jury certificates, and other funds received by him, from every source, subsequent to his last accounting, and that he was then and there in arrear and indebted to the county in a large sum of money, to-wit: $50,000, and was then and there a defaulter in his office, and refused to answer touching the

funds·of said county, and to settle his accounts; that therefore the county board, on the 11th of February, 1879, removed said Sieber from office, as such treasurer, and appointed Madison T. Stookey to fill the vacancy, and to be his successor in office for the unexpired term, etc.; that said Stookey qualified, and was duly commissioned, filed his bond, etc., and entered upon his office, and that Sieber did not pay over to his successor said $50,000, upon demand, etc., but refused so to do, etc.

Sieber's appearance was entered, and a plea filed, on his behalf, of general performance of the condition of the bond. The sureties then severally pleaded *non est factum*, verified, and also the following special pleas:

The first plea denies the specific breaches assigned, and especially that the said Sieber did not refuse to pay over to his successor. To this plea the plaintiffs joined issue.

The second plea alleges that said Sieber was county treasurer for two years previous to his term, commencing the first Monday in December, 1877, and for which last term the defendants became sureties on his bond, and that the default complained of happened at the said previous term. To the second plea the plaintiff filed a replication that the said sum of money sued for came into Sieber's hands in manner and form as in said declaration alleged. To this replication the defendants demurred, and the court carried back said demurrer to the said second plea, and sustained it thereto, so that the said plea stands ruled out by the demurrer.

The third plea of the defendants alleges that as to the sum of $20,000,—part of the sum demanded,—they were sureties merely; that it was the duty of said Sieber, as treasurer, to make his report to the county court at its regular December term, 1878, of money, county orders, jury certificates, and other funds; that Sieber failed to make such report, and that the county court did not then and there, and at that term, remove said Sieber from office, but per-

mitted him to hold his' office for three months from that time, and to receive funds belonging to the county to a large amount, to-wit: the amount of $20,000. To this plea there was a demurrer, which was sustained by the court.

The fourth plea alleges that there was not, at any time, a successor to the said Sieber, to whom he could have paid the said money alleged to have been in arrear. Upon this the plaintiff joined issue.

The fifth plea alleges that said writing obligatory had not been approved by the county board before it was filed with. the county clerk. Upon this issue was joined.

The sixth plea alleges that defendants are sureties; that it was the duty of the county board to at least once in six months examine the books of account of the treasurer, and it was the duty of the county clerk to enter upon the records of the county board the amount and kind of funds found to be in the treasury at that time, and that the county court have not performed that duty since the execution of said bond, and the clerk has not entered upon the records of the county board the amount and kind of funds found in the treasury. This plea was demurred to, and demurrer sustained, and leave given to amend.

The sixth plea was amended so as to allege, in substance, that after the county court had removed Sieber, it became their duty to appoint a suitable person to perform the duties of said office, and they appointed M. T. Stookey such suitable person, and that Sieber never refused to pay over any money to a successor,—to which plaintiff replied that Sieber did refuse to pay over to his successor. To this replication to the sixth plea there was a demurrer, which was carried back to said sixth amended plea, and sustained as to said plea.

The seventh plea alleges, on the part of all the defendants except Sieber and Christian Stern, that Christian Stern's name was the first of the names of the sureties when they signed the said bond, and that the said bond was never

signed by the said Stern, but was a forgery, which they did not know at the time when they respectively signed the said bond. This plea was demurred to, and demurrer sustained.

The eighth plea is a plea by the sureties, of general performance of the conditions of the bond by the principal, Sieber,—to which there was a general replication.

The ninth plea alleges that before Sieber was removed from office he had tendered his resignation, in order to release his sureties from further liability which they might incur by reason of his remaining in office, and said county court refused to accept his resignation. This plea was demurred to, and the demurrer sustained.

The case was then continued to the September term, 1879, at which term the case was, by consent, tried by the court, and a verdict was found for plaintiff, amounting to $26,590. Judgment was rendered accordingly. The case was appealed to the Appellate Court, at the February term, 1880, and by that court affirmed. An appeal was then prosecuted from the judgment of the Appellate Court to this court, and the judgment of the Appellate Court was, by this court, reversed, and the cause remanded. See *Stern et al.* v. *The People, use, etc.* 96 Ill. 475.

After this, the plaintiff filed three replications to defendants' third plea, which need not be set out, since no question to be now determined arises upon them.

The cause was submitted to a jury at the February term, 1881, of the circuit court, and they rendered a verdict for the plaintiff, assessing the damages at $30,337. The court, after overruling a motion for a new trial, rendered judgment for the penalty of the bond ($200,000), to be discharged by the payment of the damages assessed by the jury—$30,337. Appeal was prosecuted from that judgment to the Appellate Court for the Fourth District, and it was there affirmed. The present appeal is from the last mentioned judgment.

Errors were assigned, raising the questions discussed by the court in its opinion.

Messrs. G. & G. A. KOERNER, for the appellants, contended, in an extended brief, that the neglect of the county board to remove the principal, for neglect of duty, etc., released his sureties for any subsequent defaults, citing Rev. Stat. 1874, chapter entitled "County Treasurer," secs. 10, 14, 15; *The People* v. *Jansen,* 7 Johns. 332.

The seventh plea, that the first of the names on the bond appearing as surety, was forged, and that the other signers of the bond did not know anything of the forgery, was interposed on the strength·of the ruling in *Seely* v. *The People,* 27 Ill. 173.

It is claimed that case has been overruled in *Stoner* v. *Millikin et al.* 86 Ill. 218. In the latter case commercial paper was in question, and it is well known that distinctions are made in favor of such paper. *The People* v. *Organ et al.* 27 Ill. 29.

When the suit was brought there was no successor of Sieber to whom he could have paid the money. To prove there was such successor, the plaintiff produced the record, and read the order of removal, and appointment of Stookey as his successor. This the law does not justify. A successor can only be elected, and Stookey can be only looked upon as a provisional appointee. The record of the county board being made in Sieber's absence, could not be properly admitted against him. The defalcation was to be proved by his accounts and books.

Under the arrangement between Sieber and the bank that his deposit account should be charged by county orders taken by·the bank, the sureties should have been allowed credit for such county orders held by the bank against the treasurer's deposit.

Interest was not properly allowable against the defendants. *Madison County* v. *Bartlett et al.* 1 Scam. 67; *Sammis* v. *Clark*, 13 Ill. 544.

Interest is only allowable as provided by statute. *Illinois Central R. R. Co.* v. *Cobb*, 72 Ill. 148; *Chicago* v. *Alcock*, 86 id. 148.

What is meant by vexatious delay, and that defending suits is not such delay, see *Aldrich* v. *Dunham*, 16 Ill. 403.

Interest under our statute, (sec. 2, act of May, 1879,) which, in this particular, is like the former statutes, is not chargeable on an open account, where it has not been liquidated, and a balance agreed upon. *Flake* v. *Carson*, 33 Ill. 518.

A creditor is not entitled to interest on a balance on an account, unless there has been a promise to pay interest, or an unreasonable delay of payment. *Myers* v. *Walker*, 24 Ill. 133.

We have carefully examined all the cases on official bonds decided by this court, and we have not been able to find one case where such interest was even claimed. In the case of *Gage et al.* v. *City of Chicago*, 95 Ill. 593, it appears from the reported case, that on the 16th of December, 1873, there was a deficit of $507,703 on the part of Gage, after he had paid over to his successor the sum of $458,077.23. The case was decided several years after 1873, but the verdict was for the deficit only, and no interest was allowed.

Messrs. WILDERMAN & HAMILL, Messrs. NOETLING & HALBERT, and Mr. R. D. W. HOLDER, for the appellees:

The law requiring periodical reports and examinations of the accounts of officers, is directory merely, and for the benefit of the public, and not for the benefit of the sureties of the officer, and they have no right to rely upon *Detroit* v. *Weber*, 26 Mich. 284; *United States* v. *Kirkpatrick*, 9 Wheat. 720; *United States* v. *Vanzandt*, 11 id. 184; *United States* v. *Nicholl*, 12 id. 505; *United States* v. *Boyd*, 15 Peters, 187;

*Jones* v. *United States,* 18 Wall. 662; *Gibbons* v. *United States,* 8 id. 269; *Osborne* v. *United States,* 19 id. 577.

The negligence of the county board, if there was any, in failing to remove Sieber, does not absolve his sureties from liability on the bond. *Coons* v. *The People,* 76 Ill. 383; *Cawley* v. *The People,* 95 id. 249; *Ryan* v. *United States,* 19 Wall. 514; Angell & Ames on Corporations, sec. 321.

In this case there was no neglect, or even unreasonable delay, on the part of the board. But even if there was, it could not avail appellants as a defence. The county board has no such control of public moneys as would render its negligence, or even its willful disobedience of the law, binding upon the county, so far as to absolve appellants from their duty to answer for the defaults of their principal, whether they occur before or after the negligence of the board. *Cawley* v. *The People, supra; Coons* v. *The People,* 76 Ill. 338; *Sherlock* v. *Village of Winnetka,* 59 id. 389; *Jackson* v. *Norris,* 72 id. 364; *Detroit* v. *Weber,* 26 Mich. 284; *Supervisors* v. *Jones,* 19 Wis. 51; *Supervisors* v. *Knipfer,* 37 id. 496; *Gallery* v. *National Ex. Bank,* 41 Mich. 169; Brandt on Surety and Guaranty, secs. 474–6; Angell & Ames on Corp. sec. 321.

The case of *The People* v. *Jansen,* 7 Johns. 332, cited by counsel for appellants, is not in point; but even if it were, it has been so often overruled and its authority denied, that it is scarcely worth while to allude to it. The following cases have expressly denied its authority, or announced principles squarely opposed to it: *Cawley* v. *The People, supra; People* v. *Russell,* 4 Wend. 720; *Minor* v. *Mechanics' Bank,* 1 Pet. 46; *Amherst Bank* v. *Root,* 2 Metc. (Mass.) 522; *United States* v. *Vanzandt, supra.*

The appointment of Stookey as Sieber's successor was strictly according to the law. Rev. Stat. 1874, ch. 36, sec. 15; ch. 46, sec. 133.

The fact that the name of one of the first sureties on the bond was forged, is no defence by sureties signing after-

wards, counsel cited *Stoner* v. *Millikin*, 86 Ill. 218; *State* v. *Pepper*, 31 Ind. 76; *York County Fire Ins. Co.* v. *Brooks*, 51 Me. 506; *Terry* v. *Hazlewood*, 1 Duv. 104; *Selser* v. *Brock*, 3 Ohio St. 302; *Smith* v. *Peoria County*, 59 Ill. 412; *Dair* v. *United States*, 16 Wall. 1; *McCormick* v. *Bay City*, 23 Mich. 457; Brandt on Guaranty and Surety, secs. 336, 356; *State ex rel. Baker* v. *Brown*, 64 Mo. 169; *Statute, etc.* v. *Potter*, 63 id. 212; *Franklin Bank* v. *Stevens*, 39 id. 533.

The reports of Sieber were properly admitted in evidence with other proof, and the records of the board approving the reports are proper evidence, because when presented and approved it becomes conclusive. *Morley* v. *Town of Metamora*, 78 Ill. 394; *Roper* v. *Sangamon Lodge*, 91 id. 518; *Pendleton* v. *Bank of Kentucky*, 1 B. Mon. 181; *Townsend* v. *Everett*, 4 Ala. 607; *Frazier* v. *Laughlin*, 1 Gilm. 347.

The offer to prove the deceased witness' testimony by a bill of exceptions taken on a former trial, was properly rejected *Roth* v. *Smith*, 54 Ill. 431; *Mineral Point R. R. Co.* v. *Keep*, 22 id. 9.

As to various instances in which interest is recoverable in suits on official bonds or other instruments, counsel cited *Frazier* v. *Laughlin*, 1 Gilm. 347; *Magner* v. *Knowles*, 67 Ill. 325; *Crane* v. *Dygert*, 4 Wend. 675; *Bedell* v. *Janney*, 4 Gilm. 193; *Chapman* v. *Burt*, 77 Ill. 337; *Dodge* v. *Perkins*, 9 Pick. 368; *Tappan* v. *People*, 67 Ill. 339; *United States* v. *Curtis*, 100 U. S. 119; *People* v. *Gashier*, 9 Johns. 71; *Thompson* v. *Board of Trustees*, 30 Ill. 99; *United States* v. *Prescott*, 3 How. 578; *Bernard* v. *Bartholomew*, 22 Pick. 291; *Greeley* v. *Hopkins*, 10 Wend. 96.

Mr. Justice Scholfield delivered the opinion of the Court:

The third plea interposed the defence that the failure of the county board to remove Sieber from office, because of his default in making his report to that board at its December term, 1878, relieved the sureties from liability

for breaches of the bond occurring subsequent to that time. The circuit court, by sustaining a demurrer to the plea, adjudged the defence invalid, and such was also necessarily the ruling of the Appellate Court in affirming the judgment of. the circuit court. The correctness of this is contested by appellants in argument.

It has long been held by the Supreme Court of the United States that statutory directions to public officers are given for the security and convenience of the government, and to regulate the conduct of its officers, but that, being directory, they form no part of the contract with the surety, and hence sureties on bonds for the collection of revenue can not plead the negligence or failure of public officers to require their principal to render.an account, or to remove him for neglect, as required of such officers by law, as a defence to their liability upon a subsequent breach of his bond. *United States* v. *Kirkpatrick*, 9 Wheat. 720 ; *United States* v. *Vanzandt*, 11 id. 184; *United States* v. *Boyd et al.* 15 Pet. 187 ; *Jones et al.* v. *United States*, 18 Wall. 662 ; *Ryan* v. *United States*, 19 id. 514.

The power to remove a treasurer, under our statute, is not, as counsel contend, a judicial power,—it is a ministerial or executive power. *Donahue* v. *County of Will*, 100 Ill. 94.

*The People* v. *Jansen*, 7 Johns. 332, cited in support of this plea, is not in harmony with the rulings of the Supreme Court of the United States, above . referred .to,. nor with those of this court, and it·was subsequently overruled by the court in which the case was decided, so far as affects the present question. *The People* v. *Russell*, 4 Wend. 570.

This court has held, upon like principle, with the ruling of the Supreme Court of the United States, *supra*, that the default of the treasurer is not excused by the negligence of the county board, and it can not be interposed as a defence by the surety. (*Coons* v. *The People*, 76 Ill. 391, and *Cawley* v. *People*, 95 id. 249.) The statute has provided a mode

whereby sureties upon official bonds may be released from further liability, (Rev. Stat. 1874, p. 729, sec. 10,) and if appellants truly desired, at the time claimed, to be released from further liability on Sieber's bond, they should have pursued that mode. It was within their power thus either to have compelled the execution of a new bond, with other sureties, or a vacation of the office, then, and to have effectually relieved themselves from further liability. And this is the only mode of which we are aware by which they could have released themselves from further liability.

The defence is clearly without merit, and the demurrer to the plea was properly sustained.

The sixth plea, as amended, avers that it was the duty of the county board to, at least every six months, examine the books of account of the county treasurer, and count the funds and make settlement with such treasurer; that the county board did, on the 10th day of February, 1879, examine the books of account of the said George W. Sieber, then county treasurer, and the said Sieber, on said day, neglected and refused to render an account to said county board, and refused to answer questions propounded to him by said board; that it became then and there the duty of said county board to remove said Sieber from office, and to appoint some suitable person to perform the duties of the said office until his successor was elected or appointed and qualified; that in pursuance of said duty the said board appointed one Madison T. Stookey as a suitable person to perform the duties of said office, and that there has been no successor elected or appointed to said George W. Sieber, and that the said George W. Sieber has never refused to pay over to his successor, etc. A demurrer to the replication having been carried back and sustained to this plea, we are asked to pass upon its sufficiency.

Since the manifest purpose and effect of the plea is only to question the right of Stookey to act as successor in office

to Sieber, and to demand and receive from Sieber the moneys, etc., in his hands, it is plain that it is argumentative, and obnoxious to a special demurrer. But it is equally clear that the facts alleged constitute no substantial ground of defence, and so the plea is also obnoxious to a general demurrer.

It is provided by sec. 15, ch. 36, Rev. Stat. 1874, p. 324: "If any county treasurer shall neglect or refuse to render an account or make settlement at any time when required by law, or by the county board, or refuse to answer any question propounded to him by the county board, or is a defaulter, and in arrears with the county, or is guilty of any other misconduct in his office, the county board may remove him from office, and may appoint some suitable person to perform the duties of treasurer until his successor is elected or appointed and qualified. The person so appointed shall give bond and security as required by law of the county treasurer." The phraseology is somewhat obscure as to whether it is intended the person thus to be appointed shall perform the duties of treasurer until his own successor shall be elected or appointed and qualified, or until a successor to the removed treasurer shall be elected or appointed and qualified. Appellants, assuming the last to be the correct construction, contend that Stookey was only acting until the appointment of a successor to Sieber, and that Sieber was bound to pay over to none but a successor. That the former is the correct view we entertain no doubt. The person appointed "shall perform the duties of treasurer,"—not certain designated duties, but in general and unrestricted terms, "the duties," *i. e.* all the duties, "of treasurer,"—and this includes necessarily the demanding and receiving from his predecessor in office the money, etc., in his hands. And in requiring that he shall give bond and security, as required by law of the county treasurer, he is required to give bond, with sufficient security, that he shall perform all the duties which are or may be

required by law to be performed by him as treasurer, etc., and that when he shall be succeeded in office he shall surrender and deliver over to his successor in office all books, papers, money, etc., belonging to said county. (See sec. 2, ch. 36, Rev. Stat. 1874, *supra*.) Where the vacancy caused by the removal exceeds one year, an election must be called to fill the vacancy, and in such case the person appointed will hold only until his successor shall be elected and qualified, etc. (Sec. 133, ch. 46, Rev. Stat. 1874, p. 468.) But however brief the term which the person appointed shall fill, he is, until his successor is elected or appointed and qualified, treasurer of the county, and consequently successor in office to the treasurer removed, and whose place he fills.

The ruling sustaining the demurrer to the seventh plea presents the question whether the fact that one of the names of the sureties was forged releases the sureties subsequently signing, who did not then know that the name was forged.

In *Seely* v. *People, use, etc.*, 27 Ill. 173, this court held where a party executes a bond as surety with another whose name has been forged, he will not be liable. But in *Stoner* v. *Millikin*, 85 Ill. 218, this case was overruled, and it was held where one of two innocent parties, as, the payee or surety upon a promissory note, must be a loser by the deceit or fraud of another, the loss must fall on him who employs and puts trust and confidence in the deceiver, and not on the other. Counsel for appellants, however, insist this case only modifies *Seely* v. *People, use, etc.*, in favor of commercial paper, leaving it in full force and effect in all other cases, and they cite *The People* v. *Organ*, 27 Ill. 29, as making such a distinction. But that case, in this precise respect, is overruled by *City of Chicago* v. *Gage et al.*, 95 Ill. 593, and it was there held, in a suit upon the bond of the treasurer of the city of Chicago, that the apparent authority of the principal in an obligation which has been executed in blank by others as sureties, to fill in the blanks in an appropriate manner,

may be implied from the facts and circumstances attending the transaction, and may be shown by parol, and that this rule applies to instruments under seal as well as to those which are not under seal.

Where a person signed an official bond as surety, and it was agreed between him and the principal in the bond that it should not be delivered to the obligee until another person, who was named as a surety, should sign the bond, but it was delivered without obtaining his signature, we have held, in the absence of notice, the obligee has the right to presume that the surety had conferred full general authority to deliver the bond,—that such agent may bind his principal to the extent of his apparent authority. *Smith* v. *Peoria County*, 59 Ill. 412; *Comstock et al.* v. *Gage, for use, etc.* 91 id. 328; *City of Chicago* v. *Gage et al. supra.*

The principle is conclusive on the facts here. The subsequent sureties relied upon Sieber, and made him, ostensibly, their agent to deliver the bond. If Sterns' name was forged, it was Sieber, and not the obligees of the bond, nor the county board, who betrayed and deceived them, and delivered the bond in violation of the condition, express or implied, upon which they signed and placed it in his possession,—and so the consequences of the forgery must fall upon them, and not upon the People. *State ex rel.* v. *Baker*, 64 Mo. 167.

In *The People* v. *Coons et al.*, an original suit upon a treasurer's bond, (at January term, 1875,) plea, to like purport as that before us, was interposed by certain of the sureties, that the name of a prior surety was forged, and we sustained a demurrer to the plea, upon the grounds hereinbefore stated, but no opinion was filed giving the reasons of the ruling; and we have ruled to like effect in other unreported original suits upon treasurers' bonds.

The question raised in argument in regard to the sufficiency of the fourth plea, is answered by what we have said in regard to the sixth amended plea.

It is objected that on the trial before the jury a paper was introduced as Sieber's September, 1878, report, and, over appellants' objections, read in evidence to the jury: There was no error in this. The proof shows that it was in Sieber's handwriting, and presented by him to the county board as his report. The reports of Sieber were competent evidence against his sureties, as were also the records of the county board approving them. *Morley* v. *Town of Metamora,* 78 Ill. 394; *Cawley* v. *The People, supra; Smith* v. *Peoria County, supra.*

Nor do we think there was any error in permitting the record showing the removal of Sieber, to be read in evidence. The county board had power to remove him, (*Donahue* v. *County of Will et al. supra,*) and the record of removal was the best evidence of that fact, (*McHaney* v. *County of Marion,* 77 Ill. 488,) and it was material to the issue that proof of the removal be made.

It is also objected that the court erred in refusing to allow the bill of exceptions giving the testimony of a deceased witness to be read in evidence. The objection is not tenable. Witnesses should have been called to prove, from their recollection, what was the testimony of the deceased witness. *Roth* v. *Smith,* 54 Ill. 431; *Mineral Point R. R. Co.* v. *Keep,* 22 id. 9.

We perceive no error in the refusal of the court to give appellants' instructions, as asked. From the record it would seem there is not only no evidence upon which to predicate these instructions, but evidence directly to the contrary of what they assume, and their refusal might, therefore, be predicated upon this ground. But they proceed upon the hypothesis that an arrangement between Sieber and the National Bank of Belleville, whereby Sieber should deposit revenue with the bank, and the bank should be allowed to place county orders to its own credit, as against Sieber's deposit account, would, as between the People and the sure-

ties of Sieber, be a payment of all orders in the possession of the bank at the time of Sieber's default, notwithstanding nothing was, in fact, paid by Sieber upon such orders. Although such a transaction would be liable to objection, we fail to perceive any principle upon which it could be held the orders were paid and entitled to be canceled. As between Sieber and the bank, he would be entitled to have the orders delivered up to him, to the extent that the money deposited by him had been treated as paying for them, but no further; and his sureties occupy no more favored position. . The transaction might, possibly, be entirely repudiated by the People, and Sieber held to account for all money deposited by him, without regard to claimed credits of county orders purchased; but this can give Sieber's sureties no right to say that a mere contract to set off county orders against a deposit account shall be held as a payment of the orders, when no set-off has been actually made, and there is no fund against which it can be made.

The only remaining question deemed necessary to be noticed, is, was interest, at six per cent per annum, properly allowed upon the amount of defalcation. We think it was. By our statute in relation to interest, (Rev. Stat. 1874, chap. 74, sec. 2, page 614,) it is provided: "Creditors shall be allowed to receive at the rate of six per centum per annum, * * * on money due on the settlement of account, from the day of liquidating accounts between the parties and ascertaining the balance, on money received to the use of another, and retained without the owner's knowledge." It would seem, on the record before us, there is ground to justify the allowance of interest under both of these clauses. The accounts rendered by Sieber to the county board, and their approval by that board, liquidated and settled the accounts up to their respective dates, and ascertained the balance then due. Appellants, themselves, gave evidence of an account stated by Sieber's attorneys in fact, on March 4, 1879,

acknowledging a balance due of $26,592.01, and interest upon this amount will produce an amount which, added to the principal, will equal the judgment. There was, too, a report by Sieber himself, on the 1st of December, prior, admitting a balance due from him of $30,354.68, which is more than the amount for which the judgment was rendered. The reduction was in the interest of the appellants, and, of course, was not objected to. But the fact of the balance on the settlement of account is beyond controversy, and interest was properly computed thereon. *Ditch, Admr.* v. *Vollhardt,* 82 Ill. 134.

The case made by the record is clear that Sieber retained this money to his own use, and that the act of retention was, at the time, unknown to the county board, and so it is within the letter and the spirit of the statute. And upon this principle we have held, where an attorney collects money for another and converts it to his own use, or fails to pay it over to the person entitled, on demand, he is chargeable with interest. *Bedell* v. *Janney,* 4 Gilm. 193; *Chapman* v. *Burt,* 77 Ill. 337. And where a constable collects money on execution, and refuses to pay it over on demand, he is chargeable with interest in a suit on his official bond. So, also, upon like principle, it has been held by the Supreme Court of the United States, that in an action against the sureties upon the bond of a pay-master in the army, interest was recoverable, and as in that case no demand was made previous to bringing suit, it was held the interest should be computed from the date of the service of the writ.

Perceiving no error in the record, the judgment is affirmed.

*Judgment affirmed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: A petition for rehearing is presented in this case, in which it is insisted we have failed to give sufficient

consideration to three points made in appellants' brief, namely: First, that the court below erred in admitting in evidence that portion of the order of removal of Sieber reciting that the county commissioners found him to be a defaulter, etc; second, that the court below erred in excluding evidence of the state of accounts between Sieber and the First National Bank of Belleville, on the 1st day of December, 1875, and on the 1st day of December, 1876; and third, that the court below erred in refusing the first and second instructions asked by appellants. We have given a patient and careful consideration to the questions thus presented, and are of opinion they were properly decided by the court below.

Under the issues, it was incumbent on appellees to prove that Sieber was legally removed from office, and his successor appointed. The commissioners could remove for no other causes than those recited in the statute. A removal for any other cause would not create a vacancy, (*Clark* v. *The People,* 15 Ill. 217,) and the record of the board afforded the best evidence of his removal, and the cause thereof. (*McHaney* v. *County of Marion,* 77 Ill. 488.) Besides this, it was impossible that this finding that Sieber was a defaulter could in any way have prejudiced the sureties, (even if the fact were conceded, which is not, that they are not bound by the recitals of this record,) for other evidence abundantly established the fact that he was a defaulter.

The state of accounts between the bank and Sieber in 1875 and 1876, before the bond in suit was executed, and before the term of office for which it was executed commenced, could not have any bearing on the issues being tried. The September report of Sieber was conclusive on the question of a former defalcation, and counsel disclaimed that the purpose was to prove any special arrangement between Sieber and the bank. We still think, as said in the former opinion, that the evidence expressly shows that the bank had

no arrangement by which it bought up county orders for Sieber. Andal, the cashier of the bank, testified, and no one contradicted him : "Had no agreement with him" (Sieber) "in his official capacity, to pay county orders for him." This witness also said, that as long as he remained in the bank it cashed county·orders right along,—that even on the day Sieber left, it paid them right straight along. "We did it," said he, "for the accommodation of our customers, and for our benefit. It brings us customers sometimes. Took ·those orders like other good paper."

Nor can we agree with counsel that the fact that the bank, sometimes, in settling with Sieber, charged Sieber· with the county orders and took credit for a like amount. of deposits, is evidence that the bank bought the county orders as Sieber's agent. It is evidence that the bank treated the county orders. as entitled to be paid out of the fund credited to Sieber, and nothing more. Had the bank, in its settlement with Sieber, offset his paper against his deposit, surely this could not be held to be evidence that it had bought the paper as his agent,—it could only be evidence that it claimed to be the lawful holder of paper of his which it was entitled to set off against his account ; and this is precisely, as we think, the only presumption that could arise in the transaction here supposed, and so the instructions were properly refused. In preparing the original opinion, we supposed the views here expressed were obvious, therefore needed no special notice.

The prayer of the petition is denied.

*Rehearing denied.*