# THE UNITED STATES *v.* BOYD.,

EVIDENCE ; DECLARATIONS OF DECEASED ATTESTING WITNESSES ;
BONDS, PROOF OF EXECUTION OF ; PRINCIPAL AND
SURETY ; ESTOPPEL ; FORGERY.

1. Declarations of a deceased attesting witness to an instrument are
   not admissible in evidence to show, in disparagement of the
   evidence of its execution afforded by his signature, that the
   signature so attested was forged.

2. In a suit on a bond against principal and sureties when the attesting
   witnesses are dead, it is error for the trial court to instruct the
   jury, without qualification, that the plaintiff, in order to make
   out a case is bound to satisfy the jury by a preponderance of the
   evidence that the signature of a surety claimed to be a forgery
   is his genuine signature. The jury should in such a case be told
   that the evidence of the death of the subscribing witnesses and
   proof of their signatures would make a *prima facie* case of the
   due execution of the bond by the principal and .all of the
   sureties.

3. By the execution of a bond and its return to the principal or his
   agent for delivery to the obligee, a surety becomes estopped to
   set up any condition not known to the obligee, upon which his
   signature has been obtained.

4. The forgery of the name of one surety on a bond will not discharge
   a co-surety, whose name follows that of the first surety, from
   liability on the bond.

No. 537.  Submitted March 5, 1896.  Decided April 29, 1896.

HEARING on an appeal by the United States from a judgment on verdict in an action on a bond against principal and sureties. *Reversed.*

The COURT in its opinion stated the case as follows :

This suit was instituted April 11, 1889, by the United States against William T. Collins, Francis McGhan, Robert Boyd, Milton M. Ward, Newton Crawford, William H. Slater, Joseph T. Brown and Cary W. White, upon an official bond of said Collins in the sum of $100,000, exe--

cuted April 11, 1869, as required by law, for the faithful discharge of the duties of pension agent at Washington. He served as pension agent from April, 1869, to January 29, 1872, and on settlement was found to be in arrears to the amount of $49,525.06.

The death of defendants McGhan, Ward, Crawford and White was suggested February 4, 1895; but no order seems to have been entered thereon. It does not appear whether Collins and Brown were ever served with process, and no disposition of the case as to them seems to have been made.

Defendant Boyd entered a plea of *non est factum*. Defendant Slater's plea was to the effect that he executed the bond upon the condition that the same should first be executed by defendant Boyd; that the said Boyd's signature appeared on the bond and was represented to be genuine, and that he has since discovered that the said signature was forged; wherefore he prayed judgment, etc.

On the trial the Government offered the bond, and, proving the death of the two subscribing witnesses, John S. Hollingshead and Timothy Luby, offered proof of the genuineness of their signatures as well as that of the principal, Collins. Proof was then made from the records of the Treasury Department of the indebtedness of Collins. Robert Boyd testified that he had not signed the bond; that he had been solicited to do so by the subscribing witness Luby and one Whalen, who was Luby's clerk, and had declined. He said further, under objection, that after seeing the published list of Collins' sureties, in connection with notice of his defalcation, he called to see Hollingshead, who was not only a subscribing witness, but also the notary who certified to the acknowledgement of the signatures of all the parties. He recounted the interview with Hollingshead as follows: "I asked him if he knew me, and he said he did. I asked him where my place of business was, and he said on Ninth street. I then said, 'Did I ever appear before you and sign, or ask you to certify to my

signature on the bond of William T. Collins, or did I ever execute a paper of that kind before you?' He said that I never had; that the Boyd who appeared before him was another Boyd, a friend of Mr. Whalen."

A witness named Molier, called by Boyd, testified in corroboration of the foregoing statement concerning the interview with Hollingshead.

Boyd further testified that he called to see Luby, the other subscribing witness, also. Luby called on Whalen, who was in the next room, and said to him: "Whalen, didn't you tell me that Robert Boyd signed this bond?" Whalen's reply was not permitted to be given. Luby then said (to Boyd): "This bond was brought to me, and I signed my name to it. I never witnessed your name, but I signed it because Whalen said you had signed it." This testimony, as well as that of Molier, was objected to by the plaintiff, and a bill of exceptions taken to its admission. There was also testimony tending to show that the signature resembled Boyd's ordinary signature very closely, etc.

Slater testified, over objection also, to the fact alleged in his plea, that he signed upon condition that Boyd's signature should be first obtained; and that he supposed the signature represented to be Boyd's was genuine.

At the request of the defendants the following special prayer was given to the jury: "If the jury believe from the evidence that the signature of Boyd is a forgery, they should find for him; and, further, that upon the testimony in the case they should also find for the defendant Slater."

The general charge was as follows: "The Government is bound, in order to make out its case, to satisfy you by a preponderance of the evidence that this is Robert Boyd's genuine signature. If the Government has done that, you should return a verdict for the Government for the amount claimed as against both Boyd and Slater. They are the only defendants who are before the court now. If, on the other hand, the Government has not so satisfied you that the signature of Boyd to the bond is his genuine signature,

and if you believe from the evidence that the defendant Boyd did not sign the bond, you must return a verdict for both the defendants." The verdict was for both defendants, and from the judgment rendered thereon this appeal has been prosecuted.

*Mr. A. A. Birney*, U. S. Attorney for the District of Columbia ; *Mr. C. H. Armes*, Assistant Attorney, and *Mr. John E. Laskey*, for the United States :

The court will observe that Slater did not deny in his testimony the genuineness of the bond, so far as his own seal or signature are concerned ; nor was there any evidence whatever tending to show that the plaintiffs had any notice that he signed the bond in the belief or with the expectation that Boyd would sign it. The genuineness of the bond as against both the defendants was established by the proof of the signatures of the attesting witnesses, and there was no attempt to impeach it, so far as Slater was concerned. 1 Greenl. Ev., sec. 575 ; *Kay* v. *Brookman*, 3 C. & P. 555 ; *Sluby* v. *Chaplin*, 4 Johns. (N. Y.), 461 ; *Douglas* v. *Sanderson*, 1 Dall. 116 ; *Cooke* v. *Woodrow*, 5 Cr. 13. It was therefore error to take the case from the jury as to the defendant Slater, as the court did in granting the instruction set forth in the fifth assignment of error. The fact that the name of a surety was forged cannot affect the liability of the other sureties, the bond being complete and the condition upon which the bond was signed unknown to the obligees. *State* v. *Baker*, 64 Mo. 167.

A subsequent surety is not to be discharged because the name of a prior one has been forged ; " his own signature is an implied assertion of the genuineness of those which precede it." *Ins. Co.* v. *Brooks*, 51 Me. 506 ; *Mathias* v. *Morgan*, 72 Ala. 528 ; *Stern* v. *People*, 102 Ill. 553, 554.

Where there is nothing to put the obligee on inquiry as to the manner of execution, the bond cannot be avoided on the ground that the surety signed it upon conditions un-

known to the obligees. *Dare* v. *United States*, 16 Wall. 1 ; Citing *Green* v. *United States*, 9 Wall. 658.

*Mr. J. J. Johnson* and *Mr. D. W. Baker* for the appellees :

1. While the authorities are somewhat at variance as to the admissibility of the admissions of a deceased witness made after a former trial, to contradict his former testimony, which was reduced into writing, and is being used at another trial when he has been fully examined and cross-examined in the former trial, still all the American authorities agree upon the admissions of the declarations of a deceased subscribing witness, and the doctrine of the English case of *Stobart* v. *Dryden*, 1 M. & W. 615, has been repudiated and with, we think, very good reasons, for the rule of laying a foundation before you can contradict a witness is merely a rule of form and not one of competency. *Boylen* v. *Meeker*, 4 Dutcher, 294 ; *Otterson* v. *Hofford*, 36 N. J. L. 130 ; *Reformed Church* v. *Ten Eyck*, 1 Dutcher, 46 ; *Lossee* v. *Lossee*, 2 Hill, 609 ; *Neely* v. *Neely*, 17 Pa. St. 227.

2. The bond sued upon in this action is alleged to be a joint and several bond and the declaration alleged " that the defendants jointly and severally acknowledged themselves to be indebted to the plaintiff, etc.," so that, if the bond is not the joint and several bond of the defendants, the action must fail, and where the jury determined by the verdict that it is not the joint and several bond of one of the defendants, we hold that the determination as to one must govern as to all ; for the judgment in a cause must follow the record.

It is well settled that upon a suit on a joint contract recovery cannot be had against some of the defendants. *Kingsland* v. *Koepe*, 28 N. E. Rep. 48 ; *Boys* v. *Shawhan*, 25 Pac. Rep. 1063. And when the plaintiff elects to sue the parties jointly upon his joint and several contract, he is bound by his election. *United States* v. *Ames*, 99 U. S. 35 ; *Sessions* v. *Johnson*, 95 U. S. 347 ; *Magruder* v. *Belt*, 7 App.

D. C. 303 ; *Parke* v. *Edge*, 42 Ala. 631 ; *Helm* v. *Van Vleet*, 1 Blackf. 342 ; *Platner* v. *Johnson et al.*, 3 Hill, 476 ; *Flake* v. *Carson*, 33 Ill. 518 ; *People* v. *Organ et al.*, 27 Ill. 27 ; *Goodale* v. *Cooper*, 6 Ill. App. 81.

The exception to the above proposition arises only in cases where one of the defendants has pleaded in discharge, some matter personal to himself, as discharge in bankruptcy. The reason of the distinction is obvious, and it is this : That such special personal defence does not falsify the averment of an original joint promise, but admitting it avoids it by the averment of matter subsequent. *Robinson* v. *Brown et al.*, 82 Ill. 279 ; *Woolers* v. *Kauffman*, 67 Tex. 488 ; *Jameson* v. *Barber*, 56 Wis. 630 ; *Minor* v. *Mechanics' Bank*, 1 Pet. 75.

A judgment in favor of one of the joint and several obligors, in a plea filed to the merits of the case, would enure to the benefit of all, for the release of one of the joint and several obligors releases all. *Booth* v. *Campbell*, 15 Md. 569.

3. Every person capable of entering into a contract has the right to decide for himself into whose company he will associate and thereby enter into contract relations. He has reserved unto himself, therefore, whom he will exclude or whom he will accept as the condition of his joining with others. Because, if one is discharged the responsibility of the other is increased. *Hall* v. *Parker*, 37 Mich. 590. The bond here sued upon shows upon its face, as recited and filled up before signing, that it was to be executed by the defendant, Boyd, and although the bond seems to be expressly worded as though he had become obligor, jointly with other persons, it was never, as appears from the evidence, executed by him nor was his assent ever given to it as a party. Therefore, the omission on the part of the plaintiffs to prove the genuine signature of Boyd, or to prove his assent to the manner in which it was executed, rendered the bond invalid. Murfree on Official Bonds, Sec. 658 ; *Chamberlain & Topp* v. *Brewer*, 3 Burk. 561 ; *Seely* v. *The People*, 27 Ill. 173 ; *Guild* v. *Thomas*, 25 Am. Rep. 703 ; *Sharp* v. *The United States*, 28 Am. Dec. 676.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error is founded on the exceptions taken to the offer in evidence by the defendants of the declarations of Hollingshead and Luby, the subscribing witnesses to the bond.   As shown in the preceding statement, these witnesses were both dead, and the bond was admitted in evidence on proof of their signatures, as well as that of the principal, who was also deceased.

The question is, can the declarations of a deceased attesting witness to an instrument be admitted to show, in disparagement of the evidence of its execution afforded by his signature, that the signature so attested was forged?

The admissibility of such evidence was long a matter of doubt in England, but was finally ruled against in a well-considered case that has not since been questioned in that country.   *Stobart* v. *Dryden*, 1 M. & W. 615.   The reasoning of Baron PARKE, who delivered the opinion in that case, has met with the unqualified approval of Mr. Greenleaf, and has been admirably summarized in a section of his great treatise on the Law of Evidence, which we quote as follows :

"An exception to this rule has been contended for in the admission of the declaration of a deceased attesting witness to a deed or will in disparagement of the evidence afforded by his signature.   This exception has been asserted on two grounds :  First, that as the party offering the deed used the declaration of the witness, evidenced by his signature, to prove the execution, the other party might well be permitted to use any other declaration of the same witness to disprove it ;  and, secondly, that such declaration was in the nature of a substitute for the loss of the benefit of a cross-examination of the attesting witness, by which either the fact confessed would have been proved, or the witness might have been contradicted and his credit impeached.   Both these grounds were fully considered in a case in the Exchequer, and were overruled by the court ; the first, because the evidence of the handwriting in the attestation is not used

as a declaration by the witness, but is offered merely to show the fact that he put his name there in the manner in which attestations are usually placed to genuine signatures ; and the second, chiefly because of the mischiefs which would ensue if the general rule excluding hearsay was thus broken in upon.   For the security of solemn instruments would thereby become much impaired, and the rights of parties under them would be liable to be affected at remote periods by loose declarations of the attesting witnesses which could neither be explained nor contradicted by the testimony of the witnesses themselves.   In admitting such declarations, too, there would be no reciprocity, for, though the party impeaching the instrument would thereby have an equivalent for the loss of his power of cross-examination of the living witness, the other party would have none for the loss of his power of re-examination." 1 Greenleaf Ev., Sec. 126 ; see also 1 Wharton Ev., Sec. 731.

Counsel for appellees have made a forcible argument on behalf of the admissibility of this evidence, founded largely on the hardships that must result, in some cases, from the rigid enforcement of the rule of exclusion ; and they have the support of decisions by some courts of high authority in this country.

After careful examination of those cases, and after much consideration, our conclusion is that the rule of exclusion is supported by the strongest reason.   The hardships that might result from the exclusion of the declarations are more than set off by the greater mischiefs that would follow the establishment of this exception to the general rule against the admissibility of hearsay evidence.   Courts that have held to the contrary have been forced to admit the weakness and unreliability of such evidence, and some of them have said that without strong support it would not justify the rejection of an instrument.

2. Instead of instructing the jury, as was done without qualification, that " the Government is bound, in order to make out its case, to satisfy you by a preponderance of the

evidence that this is Robert Boyd's genuine signature," the court should have told them that evidence of the death of the subscribing witnesses and proof of their signatures would make a *prima facie* case of the due execution of the bond by the principal and all of the sureties. *Clark* v, *Courtney;* 5 Pet. 319, 344; *Sicard* v. *Davis,* 6 Pet. 124, 137; *Stebbins* v. *Duncan,* 108 U. S. 32, 44; *Hanrick* v. *Patrick,* 119 U. S. 156, 172.

3. The last point for consideration arises on the exception taken to the charge to the jury, to the effect that they must find for the defendant Slater also, in the event that they should find that the defendant Boyd did not execute the bond.

We think this, too, was error. By the execution of the bond and its return to the principal or his agent for delivery to the obligee, Slater became estopped to set up any condition not known to that obligee, upon which his signature had been obtained. *Dare* v. *United States,* 16 Wall. 1. Nor can the forgery of Boyd's signature, if it be established, have the effect to discharge Slater from liability on the bond. He should have inquired into that before signing his name. He trusted to the principal in the bond, for whose accommodation he signed, and must suffer the consequence of his fraud. He cannot shift the loss upon the obligee who received the bond in reliance upon the genuineness of all the signatures, and to whom the signature of Slater, following that of Boyd, might well be regarded as a representation of its genuineness. *York Co. M. F. Ins. Co.* v. *Brooks,* 51 Me. 506; *State* v. *Peffer,* 31 Ind. 76; *Helmes* v. *Wayne Agr. Soc.,* 73 Ind. 325; *Selzer* v. *Brock,* 3 Ohio St. 302, 308; *State* v. *Baker,* 64 Mo. 167; *Stern* v. *The People,* 102 Ill. 540, 553; *Lombard* v. *Mayberry,* 24 Neb. 674, 685.

For the reasons given, the judgment must be *reversed, with costs to the appellants, and the cause remanded for new trial. It is so ordered.*