## C. J. Meyer v. Joshua Johnson, et al.

### Gen. No. 4,523.

1. CROSS-EXAMINATION—*when properly restricted.* A cross-examiner is properly restricted where he seeks by cross-examination to elicit facts not inquired into upon direct and which go to make up his affirmative defense.

2. APPLICATION OF PAYMENTS—*when creditor cannot make.* Where a creditor wrongfully obtains a sum of money from his debtor, he cannot, without the consent of such debtor, apply such sum in liquidation of any prior claims he may have against him.

3. SET-OFF—*when should be pleaded.* When the defendant relies upon counter-claims against the plaintiff to liquidate the obligation in suit, a plea of set-off is essential to avail thereof.

4. INTEREST—*when may be recovered.* Interest may be recovered upon a sum of money obtained by the defendant from the plaintiff by deception.

5. BILL OF PARTICULARS—*when need not claim interest.* Where interest is recoverable upon a claim by virtue of statute, it is not essential to an allowance of interest that a claim therefor should be made in the bill of particulars filed by order of court.

6. VERDICT—*interest allowable upon.* It is proper for the court, upon entry of judgment, to compute the interest upon the verdict from the time of its rendition and to enter judgment for the amount of the verdict plus the interest, where the jury by their verdict indicate that they intend to allow interest but do not compute the same.

Action of assumpsit. Appeal from the County Court of Will County. the Hon. DWIGHT C. HAVEN, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

D. F. HIGGINS, A. J. VINSON and FRED W. WALTER, for appellant.

MILLER, DRAKE & HUBBELL and DONAHOE, McNAUGHTON & McKEOWN, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Joshua Johnson and Levi L. Johnson, partners as Johnson & Son, at Goshen, Indiana, brought this suit in the court below against C. J. Meyer of Peotone, Illinois, to recover sums over-paid him on three cars of oats which they purchased from Meyer under a contract made by telegraph the latter part of May, 1903, by which contract he agreed to

ship them 5,000 bushels of oats at thirty-four cents per bushel, with a provision for half a cent off under certain circumstances not material to this case. The course pursued was that, upon loading and shipping a car of oats for plaint. iffs, defendant prepared a statement showing the number of the car, the number of bushels in said car, the price of said oats at thirty-four cents per bushel, and the amount of the draft which he drew against the shipment, which draft was by some understanding between them to be about three per cent. less than the price of the grain, which seems to have been left as a margin to cover any shortage which might afterwards be found in the car when it reached its destination. Meyer attached to each draft the bill of lading for the car and the detailed statement of the contents of that car, and deposited the draft with such attached papers in his bank, and it was forwarded for collection. Plaintiffs paid the drafts drawn against each of these three cars. Without detailing the separate statement of each car which Meyer attached to the draft therefor, it is sufficent to say that by these three statements it was represented that the three cars contained 5,387 bushels and 6 pounds, which at the agreed price, would amount to $1,831.56, and that he drew against these cars of oats three drafts to the aggregate amount of $1,700, which drafts plaintiffs paid. In fact these statements were untrue. The three cars contained in all only 2,642 bushels and 13 pounds, the contract price for which would have been $898.41; so that by virtue of these untrue statements Meyer obtained from plaintiffs upon these three drafts $801.59 more than the purchase price of the oats he so shipped to them. They did not immediately discover the wrong thus committed against them because they ordered the cars shipped to customers at eastern points. When they began to discover that there was some very serious shortage in these cars, and wired and wrote to him for explanation and for the weights, he gave them no satisfactory reply for a considerable time, but finally wrote them a long letter, the meaning of which was that he con- sidered that plaintiffs had wronged him in former dealings

between them, and that he had taken this method to get
that which he claimed was his due; and if on a settlement
of all their dealings it turned out that he owed them any-
thing, he would promptly remit.    They thereupon brought
this suit, filing the common counts, and also a bill of par-
ticulars under a rule of court.    Defendant pleaded the
general issue.    Plaintiffs recovered a verdict and a judg-
ment and defendant appeals.

Plaintiffs made defendant their witness and proved by
him most of the facts above stated, and had him identify
the three drafts and bills of lading, and he stated their
incorrectness and gave the exact number of bushels in fact
contained in the three cars.    The only other witness was
Homer E. Johnson, who managed the oats department of
plaintiffs' business.    There was no substantial controversy
in the evidence.    On cross-examination of defendant by his
own attorney, he stated, over objection by plaintiffs, that
these drafts were drawn on an open account which had
run since the preceding January 27th.    When, however, the
drafts are considered in connection with the detailed state-
ments made by defendant and sent with the drafts, it is
entirely obvious that the drafts were not drawn upon an
open account, but that each draft was drawn, and was
made to appear to the plaintiffs to be drawn against the
car of oats, the number of which was given on the state-
ment and shown in the bill of lading accompanying such
draft; although it is undoubtedly true that Meyer secretly
intended when he got the money to apply it on an alleged
prior account.    On such cross-examination by his own
attorney, Meyer was permitted to state, over plaintiffs'
objection, that at the time he drew these drafts plaintiffs
were indebted to him for the full amount of these drafts,
and a little more; the statement "and a little more," being
afterwards excluded.    But the court refused to permit
defendant's attorney in cross-examining him to go into the
prior dealings between the parties and to ascertain what
shipments Meyer had previously made to plaintiffs and at
what prices, and what remittances thereon had been re-

ceived by him.  We think it manifest this ruling of the court was correct, even under the statement of the witness that he drew these drafts on open account.  All that he was interrogated about in chief was matters connected with the shipment of these three cars of oats, the making of the three statements, the drawing of the three drafts, the attaching of the drafts and statements to the bill of lading, and their payment by Johnson & Son.  That direct examination of defendant called as a witness by plaintiffs, did not authorize defendant's counsel to put in his defense under the guise of cross-examination.

Defendant offered no testimony in his own behalf, and therefore he did not raise the question whether he could prove in his defense these prior transactions, and that under those transactions plaintiffs were indebted to him in any amount. If he had offered such proof in his defense it could not have been received without a plea of set-off.  The evidence does not admit of any question that plaintiffs paid this $1,700 upon shipments of oats under the contract made by telegram the latter part of May.  Defendant could not of his own volition apply the sum he thus wrongfully obtained from plaintiffs as a payment by them on any prior claims he may have had against them.  In 22 Am. & Eng. Ency. of Law, 2nd ed. 576, the rule is thus stated : " Cross-demands existing between parties cannot operate or be treated as payment with regard to each other without the express assent of both parties.  Thus, one party cannot at his option reduce his claim against the other party by subtracting from it, as so much payment, an independent debt or liability which he owes to the other party, and thereby discharge the latter indebtedness, nor can a defendant avail himself of a cross-demand against the plaintiff under a plea of payment."  Defendant having seen fit not to plead his supposed prior claims as a set-off, could not avail thereof in this action, but must be left to bring suit thereon if he desires.  This view of the law was correctly embodied in the second instruction requested by plaintiffs and given.

Defendant complains that the first instruction given at

Meyer v. Johnson.

the plaintiffs' request ignored his testimony on cross-examination, that at the time he drew these drafts plaintiffs were indebted to him in the full amount thereof. We are of opinion this instruction was correct as the case stood. Under the facts defendant could not have the benefit of a prior indebtedness from the plaintiffs to him, in the absence of a plea of set-off. Moreover, his testimony that the plaintiffs were indebted to him could not alone defeat plaintiffs' claim. If the pleadings had permitted him to do so, it would have been necessary for him to show what the prior dealings were, how many bushels of grain he had shipped to the plaintiffs, what the agreed or market price was, how much he had been paid thereon, and if the payments did not equal the agreed price or market value of the grain so shipped, then he could show the amount remaining unpaid. But his mere declaration that plaintiffs owed him as much as he took from them by untrue statements and drafts far in excess of the contract price of these particular shipments of grain, could not avail to create any defense in his favor. He could not make a defense by stating that plaintiffs owed him as much as he overdrew, but he would have had to prove the facts, and leave the jury to determine, under the instructions of the court, whether plaintiffs owed him and how much.

The bill of particulars set out the different sums overpaid defendant by these three drafts, calling it money had and received by defendant from plaintiffs. It did not specifically claim interest. The court instructed the jury that they could award interest at five per cent. It is argued that interest was not recoverable under the facts, and that if it were, yet plaintiffs could not recover interest because it was not claimed in the bill of particulars. If this $1,700 had been paid on an open account, interest would not have been recoverable, but the proofs warrant no other conclusion than that plaintiffs paid this money for the three carloads of oats, and that defendant sent statements with the bills of lading and drafts which showed that the drafts were drawn solely for part of the purchase price of said

three cars of oats, and that this was done by defendant with the intention of making plaintiffs believe that they were paying said sums for oats actually shipped them in those three cars. In fact, by untrue statements, defendant took from plaintiffs $801.59 more than the agreed price of the oats actually shipped. This money belonged to plaintiffs, and was withheld from them by defendant without the knowledge by plaintiffs that defendant had thus obtained and was holding their money. We think the case was within the spirit and intent of section 2 of the Interest Act. Stern v. The People, use, etc., 102 Ill. 540. But interest was not named in the bill of particulars. A party is bound by his bill of particulars when filed under a rule of court. He is confined to the causes of action therein stated. If the plaintiffs had claimed that there was any interest due them by virtue of any contract between the parties, they could not have been permitted to recover such interest without its being claimed in the bill of particulars. The interest here allowed, however, does not arise out of contract, but is the creation of the statute. We hold that as it is the statute which gives the interest, it was not necessary to claim it in the bill of particulars. The object of a bill of particulars is to advise the opposite party what his adversary will seek to prove as a cause of action or a defense. If statutory interest had been named in the bill of particulars, defendant's proof could not have been any different.

The jury awarded plaintiffs $756.65 " with interest at five per cent. from July 2, 1904." The court overruled motions for a new trial and in arrest, computed the interest upon the sum named in the verdict for the time and at the rate specified by the jury, and added that to the verdict, and gave judgment for the amount of the verdict with the interest added. It is not argued that the court erred in the amount of the computation, but that the court had no power to make such a computation, and that such interest could not lawfully be included in the judgment. In Lauman v. Clark, 73 Ill. App. 659, it was held a verdict like this was not uncertain,

and that the interest could have been computed by the judge or the clerk, and that the court should not have required the plaintiff to remit the interest. In 28 Am. & Eng. Ency. of Law, 300, that rule is thus stated: "The maxim, *Id certum est quod certum reddi potest,* is readily applicable to verdicts. Whenever the amount for which judgment should be rendered can be determined by a simple arithmetical calculation, this may be done by the clerk at the request of the judge, or by the judge himself, and a judgment entered accordingly. Hence, though it is the province of the jury to find the exact amount of damages by their verdict, where the finding is for a certain sum with a specified rate of interest from a designated date, judgment may properly be rendered for the principal sum, and the interest calculated in conformity with the terms of the verdict." Abbott's Civil Trial Brief, 2nd ed., 523. It is to be observed that this verdict is favorable to defendant. Although he holds $801.59 overpaid by plaintiffs on these three cars of oats, the jury reduced this to $756.65, and though plaintiffs were entitled to interest from July 2, 1903, the jury fixed the time from which interest was to be computed at July 2, 1904.

The judgment is therefore affirmed.

*Affirmed.*