## Michael C. McDonald v. The People of the State of Illinois, for use of Amanda C. Brown, et al.

### Gen. No. 12,111.

1. SHORT CAUSE CALENDAR—*when refusal to strike cause from, ground for reversal.* It is reversible error improperly to deny a motion made in apt time to strike a case from the short cause calendar and to proceed with its trial over the protest of the objecting party.

2. SHORT CAUSE CALENDAR—*when motion to strike case from, not in apt time.* A motion made several weeks after a case has been placed on the short cause calendar and on the day the case is called for trial, is not in apt time and is properly overruled.

. 3. SHORT CAUSE CALENDAR—*when case properly placed upon.* Held, that this case was properly placed upon the short cause calendar, and that the affidavit filed upon which the placing of the same on such calendar was predicated was an original and not a copy.

4. SHORT CAUSE CALENDAR—*when cause at issue within meaning of rule requiring is .es to be formed prior to placing same upon such calendar.* Where the only pleas under which the defendant could have introduced evidence were at issue or in such condition that an issue would be presumed by going to trial, the cause is at issue within the meaning of the rule, notwithstanding a demurrer to an obviously and inherently bad plea and a motion to strike a plea equally ineffectual, remain of record undisposed of.

5. JUDICIAL NOTICE—*of what taken.* Courts of this state will take judicial notice of the signature and notarial seal of a notary public.

6. ADMINISTRATOR'S BOND—*what not essential to suit upon.* A demand and the lapse of thirty days are not essentials to a suit upon an administrator's bond. Section 113 of the Administration Act which provides for demand, *et cetera,* is limited in its operations by section 13 of chapter 103 and only applies where the administrator is to be proceeded against by attachment of his person.

7. ADMINISTRATOR'S BOND—*what fixes extent of liability upon.* An order of the court of probate which determines and settles the sums due to the various beneficiaries, likewise determines and fixes the amounts for which the administrator's bondsmen are liable in the event of non-payment.

8. ADMINISTRATOR—*when liable for interest.* It is by virtue of sec-

tion 114 of the Administration Act and not by virtue of an affirmative order that an administrator becomes liable for interest upon assets remaining in his hands undisposed of after the lapse of two years and six months from the date of his letters. An order of court is essential to discharge him from the liability to pay such interest.

9. ADMINISTRATION ACT—*section 114 construed.* This section which provides for the payment of interest by the administrator upon assets remaining in his hands undisposed of after the lapse of two years and six months from the date of his letters, is not penal, and such interest is not a penalty, and consequently the bondsmen of the administrator are liable for its payment.

10. NEWLY DISCOVERED EVIDENCE—*essentials of affidavit setting up, as ground for new trial.* Affidavits in support of a motion for a new trial upon the ground of newly discovered evidence must be full, precise, detailed and circumstantial, and it must appear therefrom that the witness or witnesses relied upon is or are ready to testify, and that his or their personal affidavits are produced or good cause shown for non-production.

11. NEWLY DISCOVERED EVIDENCE—*what essential to application for new trial on ground of.* An application for a new trial upon the ground of newly discovered evidence will fail, unless it appear that there has been no negligence and no lack of diligence in not securing the testimony on the trial.

12. NEWLY DISCOVERED EVIDENCE—*when character of, precludes granting new trial.* A new trial should not be granted in any case on the ground of newly discovered evidence, if the evidence, when admitted, would be untrustworthy and suspicious.

Action of debt. Appeal from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed November 2, 1905.

**Statement by the Court.** This is an appeal by Michael C. McDonald from a judgment rendered against him and one John G. Brown by the Circuit Court of Cook County. The judgment was in an action of debt upon a bond of $50,000, and was for the debt of $50,000 and damages assessed at $20,627.63; the debt to be discharged on payment of the damages. The bond sued on was an administrator's bond in the form prescribed by section 23 of the Administration Act, given by John G. Brown, as principal, and George V. Hankins and Michael C. McDonald as sureties to The People of the State of Illinois for the use of the persons interested in the estate of one James M. Brown, of which John G. Brown had been appointed administrator.

John G. Brown was the son of the deceased, James M. Brown, who died intestate and left surviving him as his heirs and next of kin Amanda C. Brown, his widow, and besides John G. Brown the following children: Luna R. Testard, afterward and when this suit was brought Luna R. Rainey, James E. Brown, Annie L. Stauffer and Billy Brown. The bond was dated and executed on September 15, 1892, and approved on that date in the Probate Court of Cook County. John G. Brown then entered on his duties as administrator. October 2, 1903, he made a report to the Probate Court, charging himself with receipts from the assets left by the deceased of $87,400.66, and crediting himself with disbursements on account of claims against the estate and expenses of administration $46,-420.12. He also credited himself with $32,513.04, which sum then being the entire funds of the estate in his hands, he reported that he had loaned on June 7, 1893, without the authorization or approval of the court, to George V. Hankins (one of his bondsmen), taking therefor a note of that date due in fifteen months, executed by George V. Hankins and his wife, Effie Hankins. When the loan was made he said no security was given, but the parties executing the note were believed by him to be solvent. Afterward the makers of said note executed a deed of trust of realty to secure it, but this had been foreclosed on prior loans and the makers had become insolvent and the balance of the indebtedness had become uncollectable. As the report thus credited the administrator with the entire amount of the loan which he had made to Hankins, it charged him with certain amounts received from Hankins on account of it between its date and that of the report, amounting to $10,754.32.

It assumed the difference between $98,154.98 charges, and $78,933.16 credits, thus reckoned, or $19,221.82, to be the proper amount to be divided among the distributees. Then charging against their respective portions of such sums the amounts alleged to have been paid by the administrator to the distributees, Amanda C. Brown, Annie L.

Stauffer, Luna R. Testard, James E. Brown and Billy Brown, respectively, the report purported to show that each of them except Billy had been overpaid.

The Probate Court refused to approve this report and entered an order October 2, 1903, that the administrator file an amended account with the estate, in which he should eliminate the credit given himself of the amount loaned to Hankins.

October 13, 1903, the administrator filed such an account, which contained no credit of said $32,513.04 so loaned, nor any charges of the amounts collected on account of it. The net result was shown to be receipts to the amount of $87,400.66, and disbursements (outside of payments to distributees) to the amount of $46,741.97, and therefore a balance for distribution of $40,658.69.   In the disbursements was included $331.85 costs and attorneys' fees unpaid.   Of this amount of $40,658.69, Amanda C. Brown, as widow, was entitled to one-third, or $13,552.89, and each of the children above named to one-fifth of two-thirds, or $5421.16. The account credited each distributee with the amount thus calculated as due him or her as of the date of March 15, 1895, which was two years and six months from the granting of the letters of administration on September 15, 1892. Against this it charged the amounts which were paid such distributee on or before March 15, 1895, and to the balance thus struck added a credit to the distributee (which made a charge against the administrator) of interest at ten per cent. per annum to November 20, 1905, a date beyond the return of the report.   The amount of these several balances without interest aggregated $18,576.37.   As against the sums thus calculated as a credit to the distributee and as a charge against the administrator in each case was set off the amount of the payments made by the administrator to such distributee since March 15, 1895, with interest thereon at ten per cent. to November 20, 1903.   So reckoned, the amount declared by the account to be due to Amanda C. Brown on November 20, 1903, was $6,631.91, to Annie L. Stauffer $2,966.33, to Luna R. Testard $1,873.30,

to Billy Brown $8,846.09, while the account of James E. Brown was shown overpaid: James E. Brown was dead at the time of the trial of this case in the Circuit Court.

This corrected final report and account of the administrator was approved by the Probate Court January 4, 1904, and in the order approving it, it was found that on March 15, 1895, the administrator had in his possession and control $18,576.37, and that he should be charged with interest on such funds remaining in his hands from that date at the rate of ten per cent. per annum, no good cause being shown to the court why such interest should not be taxed in accordance with the statute in such case provided. It was therefore ordered that the administrator should pay $21.85 costs and $310 attorney's fees returned in the disbursements as unpaid, and pay Amanda C. Brown $6,631.91, Annie L. Stauffer $2,966. 33, Luna R. Testard $1,873.30, and Billy Brown $8,846.09, within five days from date.

Amanda C. Brown, Annie L. Stauffer and Billy Brown had united in a power of attorney to Warren B. Wilson, to demand and receipt for any portion of the estate due to them from either the administrator or the sureties on his bond, and Luna R. Testard, whose name had become Luna R. Rainey, had executed a similar power to the same person.

January 14, 1904, as the attorney for Amanda C. Brown, Annie L. Stauffer, Billy Brown and Luna R. Rainey, Wilson made a formal demand of John G. Brown that he should pay over the various sums ordered by the Probate Court on January 4th to be paid to them, and James R. Glass, the attorney to whom the $310 allowed in the disbursement account for attorney's fees was due, also demanded that sum of Brown. Brown, not responding to the demand, the action on the bond now here on the appeal of McDonald, was brought on the same day in the Circuit Court. It was brought against Brown, Hankins and McDonald, but Hankins was never served. McDonald pleaded as hereinafter in the opinion stated; Brown made no answer or appearance. The case was placed on the

McDonald v. The People.

short cause calendar of the Circuit Court, and as the record abundantly shows, was tried in its order on said calendar on May 16, 1904. When the evidence for the plaintiff was concluded, and again when all the evidence was in, the defendant McDonald moved that the court instruct the jury to find the issues for him. Such an instruction, and also one concerning the liability of McDonald for the interest items included in the order of the Probate Court on the administrator, were refused, and the court, on the contrary, instructed the jury to find the issues for the plaintiff, to find the debt $50,000 and assess the damages at $20,627.63, under which instruction that verdict was found.

A judgment was first entered by mistake against all the defendants. A motion for a new trial was made by McDonald and overruled. So also was the motion by him in arrest of judgment. This judgment was afterwards vacated by stipulation, and the plaintiff then moved for judgment against Michael C. McDonald and John G. Brown, and for a *scire facias* as to George V. Hankins.

Counter-motions were made by McDonald to set aside the verdict and the order theretofore entered denying a new trial, upon the grounds theretofore urged, and " upon the further ground of newly discovered evidence which barred the plaintiff from having and maintaining said suit." The motion of McDonald was denied and judgment was entered on the verdict against McDonald and Brown and a *scire facias* ordered against Hankins. Exceptions were taken by McDonald to the action of the court, and from the judgment he prayed an appeal to this court.

EDWARD MAHER, FRANK L. KRIETE and ROBERT F. KOLB, for appellant.

W. B. WILSON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The first objection made by appellant to the judgment in this case is based on the position that the cause was improperly tried on the " Short Cause Calendar": (a) because

no such affidavit as the statute requires to warrant its being placed there was ever filed, and (b) because when there placed the cause was not at issue, and so placing it violated rule 23 of the Circuit Court. To this appellee answered, first, that it does not appear by the record that the cause was heard on the short cause calendar, and that even if it did there is no error, but merely an exercise of discretion in the trial of a cause out of its regular order, thus securing that prompt adjudication of differences which is supposed to be the ideal in court proceedings.

While certainly not disposed to be astute to find a reason for reversing a judgment in a case apparently tried fairly between the parties in the mere fact that a prompter trial was accorded to them than others less fortunate could obtain, we cannot, to sustain this judgment, reason so technically as to avoid finding ample evidence in the record that it was tried on the "Short Cause Calendar," so-called, against the protest of appellant. This court in various cases also is committed to the proposition that it is reversible error improperly to deny a motion made in apt time to strike a cause from the short cause calendar and to proceed with its trial over the protest of the objecting party. Donnerstag v. Loewenthal, 77 Ill. App. 159; Casey v. Jordan, 94 Ill. App. 405; Parsley v. Halloran, 87 Ill. App. 581.

But the record here does not show a motion in apt time, or at least does not show enough about any motion in apt time to warrant this court in presuming that the motion made just before the beginning of the trial was the renewal of any motion made on the same grounds in such apt time. It has been decided by this court that a motion made several weeks after the cause was placed on the calendar, and on the day the case was called for trial, is not in apt time and is properly overruled. Freund v. Huylers, 102 Ill. App. 486; Winterburn v. Parlow, 102 Ill. App. 368.

It is not claimed in the case at bar that any motion was made to strike the cause from the short cause calendar until several weeks had elapsed after it was placed there, and under the reasoning as to dilatory motions made in the

McDonald v. The People.

cases cited, it might well be held that this alone showed the motion to have been properly overruled, especially when it is noted that the refusal by another judge of the Circuit Court to remove the cause from the calendar, made four days before the trial (which refusal appears by an order in the common law record) is not by bill of exceptions shown to be on a motion on the same grounds, or supported by the same or any evidence.

But we place our decision also on the want of merit in the grounds urged in support of the motion.

The contention of appellant is based, first, on the assumption that a copy of an affidavit only, and not an original affidavit, was filed with the clerk as the ground for placing the case on the short cause calendar. The paper in question was dated the 21st day of March, 1904, and was filed the 21st day of March. As a part of the same document, and following the affidavit, is what purports to be a notice to the counsel for McDonald, which refers to the preceding part of the document as "a copy of an affidavit." This is no part of the affidavit itself, and service of the "notice" is not acknowledged or sworn to on this paper, but such notice as the statute makes sufficient appears by an entirely separate document made and filed the next day, March 22, 1904. Therefore, we think this so-called notice attached to the affidavit should be disregarded as surplusage.

Appellant's counsel cite several cases in this court to show that a similar paper filed in the clerk's office has been held insufficient, because the "affidavit" appears by the transcript of the record to have been a "copy." No case is stronger in this respect, however, than Parsley v. Halloran, 87 Ill. App. 581, where the court says: "It is possible, of course, that what is, by appellee's own counsel in his affidavit of service of notice, called a 'copy' may be in reality an original affidavit. But if so, there is no evidence of it in the record, and we may not presume that counsel did not mean what he says when he swears it to be a copy."

In the present case there is no "affidavit" or "swearing"

that the affidavit filed was a copy and not an original,—
merely some superfluous words over the name of the
plaintiff's attorney. The transcript of the "affidavit" itself
shows no reason for supposing it a copy beyond these
words. In fact it is not a copy. Rule 13 of this court
provides means for our inspection of original papers, and
at our instance this original paper having been brought to
the clerk of this court, has been inspected by us. The affi-
davit purports to be original, and bears an original notarial
seal and signature to its jurat, of which things we take
judicial notice. 1 Greenleaf on Evidence, parag. 5.

The second ground of appellant's contention is that the
case was not at issue when placed on the short cause calen-
dar, and that rule 23 of the Circuit Court provides that,
"No cause shall be noticed for trial on the short cause cal-
endar until the same is at issue." Of the various answers
made to this objection by appellee, we think that one at
least would be effective, even if the motion of the defend-
ant had been shown to have been made in apt time. It is
in effect that the rule must be given a reasonable construc-
tion and thus shown to be a reasonable addition to the
statutory requirements, or it will be invalid, and that in
this case it would be an unreasonable construction to hold
that the cause was not by the condition of the pleadings so
at issue as to warrant its being placed on the short cause
calendar. To the declaration in debt in the ordinary form
on the bond, Brown made no answer, and McDonald filed
ten pleas. The first was *nil debet*, a plainly and confessedly
bad plea to debt on a bond. The second was *non est factum*,
concluding to the country of course, but unverified, and
therefore not a plea under which in this case, under our
statute, (Rev. Statutes, chap. 110, sec. 34) any evidence
could have been presented.

Of the other eight, four were pleas of performance con-
cluding to the country, two of *nul tiel* record, one of *non
damnificatus* concluding with a verification, and the last a
plea that Brown did, with the advice, consent and conniv-
ance of the parties for whom the suit was brought, convert

the money coming into his hands as administrator to his own use. This plea concludes with a verification. To the pleas concluding to the country, except the first and second, the plaintiff filed a *similiter*, and traversed and took issue on the others. To the plea of *nil debet* it filed a general demurrer, and the second plea it moved to strike from the files. It is because this demurrer and motion were not disposed of when the cause was noticed for the short cause calendar, that it is claimed the case was not at issue under the meaning of rule 23. Undoubtedly there is a sense in which it can be said that a cause is not at issue where such a demurrer and such a motion are pending, but as they plainly did not touch the merits of this case, or prevent its being ready for hearing, and as the only pleas under which evidence could be adduced had been formally put in issue, and if the demurrer and motion were defeated, or by plaintiff's proceeding to trial were to be held waived by him, there were left the first and second pleas concluding to the country, with which a joinder of issue would be presumed by the mere fact of so going to trial, we do not think they were a bar to placing the case on the short cause calendar.

Ryan v. The People, 165 Ill. 143, where is found the opinion of this court and that of the Supreme Court approving it, is direct authority for the position that where pleas and replications do not affect the proof required of the appellee, or the evidence admissible for the appellant, the fact that they are not formally disposed of does not prevent the cause being "at issue" under the meaning of rule 23. We find, therefore, no error in the trial of this cause on the short cause calendar.

The second objection made to the judgment by appellant is that the suit was prematurely brought. Section 115 of chapter 3 of the Revised Statutes—the Administration Act —is this: "If any executor or administrator shall fail or refuse to pay over any moneys or dividend to any person entitled thereto, in pursuance of the order of the County Court, lawfully made, within thirty days after demand made for such moneys or dividend, the court, upon appli-

cation, may attach such delinquent executor or administrator, and may cause him to be imprisoned until he shall comply with the order aforesaid, or until such delinquent is discharged by due course of law; and moreover, such failure or refusal on the part of such executor or administrator shall be deemed and taken in law to amount to a *devastavit*, and an action upon such executor's or administrator's bond, and against his securities, may be forthwith instituted and maintained; and the failure aforesaid to pay such moneys or dividend shall be a sufficient breach to authorize a recovery thereon."

Because of this statute the appellant contends that a demand upon the administrator and a lapse of thirty days are necessary conditions to a suit upon an administrator's bond, and that as the present suit was brought immediately after demand and ten days after the order for payment was entered, it was prematurely commenced. We do not agree with this contention. Section 13, chapter 103, Revised Statutes, expressly provides that suits may be instituted on the official bond of an administrator against him and his sureties whenever the condition of the bond is violated, and that it shall not be necessary to a recovery that a *devastavit* should have been previously established against the principal. This statute was passed after the Administration Act of 1872, and the two laws are *in pari materia* and must be construed together. So construing them, it seems clear that the construction given to section 115 of the Administration Act in the case of Bayless v. The People, 56 Ill. App. 55, is correct, and that a demand thirty days before the suit is only necessary when the administrator is to be proceeded against by attachment of his person. The word "forthwith" in the second clause of the section refers to the "failure or refusal" to pay over moneys as soon as the order is made—not to a failure continued for thirty days after demand.

Tucker v. The People, 87 Ill. 76, holds such a failure immediately to pay to be a breach of the bond. So do many other cases in Illinois. Curry v. The People, 54 Ill.

263; Bonham v. The People, 102 Ill. 434; McIntyre v. The People, 103 Ill. 142; Winslow v. The People, 117 Ill. 152; Nevitt v. Woodburn, 160 Ill. 203. The condition being broken, there is no reason why the suit should not then be brought.

The question raised here by appellant did not arise in Frank v. The People, 147 Ill. 105, nor in Nevitt v. Woodburn, *supra*, and we do not think that by any incidental language in those cases the Supreme Court meant to decide it adversely to the view we have indicated.

The third objection of the appellant is that the judgment is in any event excessive by the amount of $10,674, which, as the report of October 13, 1903, shows, was a charge for interest at 10 per cent. on the funds withheld by the administrator after March 15, 1895, and by the further sum of $310, the amount allowed to James R. Glass as attorney. How the exact figures of this first sum are reached, we do not know, as our computation from the accounts referred to would make it somewhat less. As, however, the amount of the interest would still be over $10,000, and our view of the matter makes the amount immaterial, it is not worth while to attempt a correction. Whatever the sum is, it is ten per cent. per annum on the amount in the administrator's hands from March 15, 1895, a date two years and six months after his appointment up to the payment of such portions as were paid, and as to the balances left unpaid, up to November 20, 1903. This is shown by the method of computation used in the account of November 13, 1903, the footings of which the order of January 4, 1904, follows. Counsel for appellant argue that the voluntary charge of such interest in the account of the administrator, particularly its charge to a date beyond the return of the account, is significant evidence of a conspiracy in which Brown was a factor, to mulct his bondsman. It is quite true, in any event, that Brown's actions with the money involved have resulted in the appellant's heavy loss, but we see no proof of any conspiracy with the beneficiaries of the estate in this charge. It was not made until after the account in which

he undertook to justify an unauthorized loan resulting in loss had been rejected by the Probate Court, from whose suggestions, rather than from any voluntary desire of his own, we think it probable that the form of the amended report had its origin. This, however, is entirely immaterial in this connection. The question for us is whether the order of January 4, 1904, which determined and settled the sums due from the administrator to the various beneficiaries, determined and fixed also the amount for which his bondsmen became liable in the event of non-payment. We think it did.

The condition of the bond is, among other things, that the administrator

"All the rest of the said goods and chattels, rights and credits which shall be found remaining upon the account of said administrator, the same being at first examined and allowed by the court, shall deliver and pay unto such person or persons, respectively, as may be legally entitled thereto, * * * and shall in general do and perform all other acts which may at any time be required of him by law."

There is a section of the Administration Act (section 114) which provides that: "All moneys, bonds, notes and credits which any administrator or executor may have in his possession or control as property or assets of the estate, at a period of two years and six months from the date of his letters testamentary or of administration, shall bear interest, and the executor or administrator shall be charged interest thereon from said period at the rate of ten per cent. * * * unless good cause is shown to the court why such should not be taxed."

Therefore, while it is true that the interest on the sums due the distributees respectively was not a "chattel, right or interest" belonging to the deceased in his lifetime, it became a part of the estate of the deceased by force of the statute, since the court did not find good cause for releasing the same. Affirmative action of the court is not needed to make this interest a part of the estate. Such action is

necessary, on the other hand, to lop it off.   It was not the
order of the court, but the force of the statute, therefore,
which made this additional sum due to the distributees
from the administrator.   The court ordered the adminis
trator to pay the distributees what he owed under the law.
He failed to do so.   Whatever else this failure was, it was
certainly a breach of the condition of the bond that he should
do and perform all acts which might at any time be re-
quired of him by law.   If this interest at ten per cent.
were a penalty, the bondsman would not be liable for it.
That a bondsman of an administrator is not liable for a
penalty for the misfeasance in office of his principal was
decided by this court in Salomon v. The People, 89 Ill. App.
374; but it was decided in the same case, and the Supreme
Court (191 Ill. 290) approved the finding, that the sureties
were liable for a certain amount of interest, on the portion
of the estate withheld by the administrator.

The Supreme Court in Estate of Schofield, 99 Illinois
513, speaks thus of the section of the Administration Act
in question:   "Prior to 1872, in this State, we have never
had any statute requiring an administrator, in any case, to
account for interest; but in the absence of a statute on the
subject, under the common law an administrator, as a gen-
eral rule, has been held chargeable with interest whenever
he receives interest, uses the money, or retains it an unrea-
sonable time after he ought to pay it over to claimants or
account to the court.   *   *   *   In 1872 the legislature
passed an act in regard to the liability of administrators to
pay interest, which is now sec. 113, chap. 3, Rev. Statutes.
*   *   *   Prior to the passage of this act we had no statute
on the subject, and the common law rule applicable to trus-
tees prevailed; but since this act has become the law of the
State, we must look to it, and to it alone, as the law which
creates the liability of an administrator or executor to pay
interest if any exists.   *   *   *   It was, no doubt, intended
*   *   *   that the administrator or executor would during
the two years after the grant of letters pay out the funds
belonging to the estate about as fast as they were col-

lected, and hence no provision was made requiring, in any
case, the payment of interest until the expiration of two
years and six months after the grant of letters.  If, how-
ever, after that time, the administrator or executor retains
money in his hands, it is right that he should account for
interest, for the reason that by a proper discharge of his
duty the estate might be settled before that time and the
moneys paid over. We are therefore of opinion that the
legislature, in framing the section of the statute *supra*, in-
tended that the statute so enacted should embrace all cases
in which an administrator or executor should be charge-
able with interest.  *  *  *  The Circuit Court charged
the administrator with interest at ten per cent. on all
moneys that he retained in his hands after the expiration
of two years and six months from the date of his letters,
and in our judgment this was correct."

We think it is plain that the legislature and the Supreme
Court regarded this section as providing, not for a penalty
extraneous to the indebtedness of the administrator, but
simply for the proper increment of the trust fund.

That the rate in 1872 was fixed at ten per cent., and has
never been changed, does not, by virtue of the excess of
such rate over the ordinarily legal rate, render it a penalty.
It merely makes it an unusually high rate of interest, prob-
ably so kept at that point to encourage prompt settlements.
For illustration, it may be noted that the rate of interest
which by statute must be paid on the principal sum neces-
sary to redeem real estate from an execution judgment or
foreclosure sale in this State has always been higher and is
now higher than the legal rate on ordinary indebtedness.
Yet it is not a penalty nor treated nor called so by the leg-
islature or the courts.

That the interest for which a public officer or one ap-
pointed by the Probate Court is liable, is a proper charge
against his bondsmen in a suit on his bond, has been ex-
pressly decided by the Supreme Court in several cases of
suit upon such bonds, although the point was distinctly
made that interest should not have been included in the

judgment. Stearn v. People, 102 Ill. 540; Cassady v. The Trustee of Schools, 105 Ill. 560; Hughes v. People, 111 Ill. 457; Winslow v. People, 107 Ill. 152.

We do not think the inclusion of this interest in the verdict and judgment was erroneous. Nor was the inclusion of the $310 allowed to Glass as attorney's fees. To that extent Glass was the beneficiary under the bond. The disbursement had been allowed by the court, but not paid. The amount was part of the fund which should have been in the hands of the administrator, and its allowance to Glass lessened by so much the amount which would otherwise have been due to the other beneficiaries. Its allowance to Glass did not increase the bondsmen's burden, but rather decreased it to the extent of interest which would otherwise have been chargeable on it.

The final contention of the appellant is, that a new trial should have been granted on account of newly discovered evidence, brought to the attention of the trial court before the judgment was entered.

It is not necessary to discuss any question raised by delay in filing the affidavits in behalf of appellant or by the consideration of counter-affidavits, although as to the last matter we think that the case of Gilchrist Transportation Company v. Northern Grain Co., 204 Ill. 510, is authority for their introduction so far, at least, as they relate to the statements of John G. Brown on his examination before Justice Caverly. But on the assumption that the affidavits on behalf of appellant are to be considered in this appeal as though filed before the motion for a new trial was disposed of, and entirely without reference to the counter-affidavits filed, the motion for a new trial on the ground of newly discovered evidence was properly denied. There is not a question even as to whether the discretion of the trial court could be interfered with by us, for we think that to have decided otherwise would have been an abuse of its discretion.

Nothing is better settled than that the party moving for a new trial on the ground of newly discovered evidence is

required to conform to very strict regulations, that such an application is regarded with great jealousy and construed with great strictness. It has been laid down that the affidavits in its support must be full, precise, detailed and circumstantial, that it must appear that the witness relied on is ready to testify, and that his own affidavit must be produced or good cause shown why it is not. Graham & Waterman on New Trials, vol. 111, page 1021, *et seq.* How far the application in this case is defective in these particulars can be easily seen from the record.

But further and especially it must appear that there has been no negligence and no lack of diligence in not securing the testimony on the trial. The reports of our own Supreme Court have many statements of this rule, needless to cite here. See, for example, however, Wright v. Gould, 73 Ill. 56. A discovery after trial that a witness knew a material fact and did not disclose it, furnishes no excuse if he was not questioned. If the consequence of failing specifically to interrogate the witness be the concealment of material evidence, it indicates such a lack of diligence as will deprive the person so failing of all claim for a new trial on the ground that such evidence was afterward newly discovered. Toledo W. & W. R. Co. v. Seitz, 53 Ill. 452; Fanning v. McCraney, 1 Morris 398; Houston v. Smith, 2 Smedes & Marshall 597; Graham & Waterman on New Trials, vol. 111, pp. 1029–1095.

In this case the alleged newly discovered evidence relied on, putting it most strongly for the appellant, is the statement of John G. Brown that the beneficiaries of the bond consented to the loan made by him to Hankins.

The allegation of "consent, advice and connivance" of these beneficiaries in the misappropriation of the funds was explicitly made by the appellant in pleas filed two months before the trial. This certainly showed at least that his attention had been directed to the possibility of such a defense. Knowledge as to the facts must have been in the possession of John G. Brown himself and of the beneficiaries. There is nothing to show that the latter were inter-

rogated or interviewed concerning it.   John G. Brown was a witness at the trial.   He was cross-examined by appellant's counsel and asked, without objection, if he was short of the money which should have been paid to the beneficiaries—if he turned it over to anybody that was entitled to it—to whom he turned it over, and if the court told him so to turn it over; and he answered that he was so short, that he had let Hankins have the money, and that he did not know whether Hankins was entitled to it or not, but he was not asked whether this was with the consent of the distributees.   This plainly was a lack of diligence fatal to a right to a new trial, on the ground that five days afterward Brown testified to defend himself in a criminal prosecution that such consent was given.

It is to be noted that a new trial should not be granted in any case on the ground of newly discovered evidence, if the evidence admitted would be untrustworthy and suspicious.   Blake v. Blake, 70 Ill. 618; Laird v. Warren, 92 Ill. 204.   But this is immaterial here, for the want of diligence is apparent.

The case is undoubtedly a hard one for appellant, and he is entitled to sympathy.   But the misfortune which he suffers is the result of his own imprudence.   According to his own statement he signed the bond of Brown, whom he did not know, at the request of Hankins, and then allowed twelve years to go by without any inquiry about the matter.   Good naturedly to sign the bond of a stranger for $50,000, at the request of a friend, was dangerous; never to inquire about it thereafter was to the last degree imprudent.   We have the authority of the wisest man in history, that suretyship for a stranger brings misfortune, and that one who is surety even for a friend should not give sleep to his eyes nor slumber to his eyelids.

The judgment in this case must be and is affirmed.

*Affirmed.*